[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of the Sandusky Municipal Court which awarded defendant-appellee, Richard D. Brugger, P.E., a judgment of $1,464 on his counterclaim for breach of contract and $9,710.26 in attorney fees after a trial to the bench. The court also ruled against plaintiff-appellant, Murray Murray, Co., L.P.A. ("Murray"), on its claims for breach of contract and fraud. Murray now challenges that judgment through the following assignments of error:
 {¶ 2} "Assignment of Error No. 1:
 {¶ 3} "The trial court erred ruling that because appellant paid the first two invoices it waived any defects.
 {¶ 4} "Assignment of Error No. 2:
 {¶ 5} "The judgment of the trial court is against the manifest weight of the evidence.
 {¶ 6} "Assignment of Error No. 3:
 {¶ 7} "The trial court erred awarding appellee attorney's fees, finding that appellant engaged in bad faith.
 {¶ 8} "Assignment of Error No. 4:
 {¶ 9} "The attorney fee award must be remanded because the amount is excessive in light of the recovery, there was no expert testimony about the reasonableness of the fee charged or the time spent, the trial court didn't consider the proper factors, and part of the fees did not relate to prosecution of Brugger's claim."
 {¶ 10} After the trial below, the lower court issued findings of fact and conclusions of law. The court's findings of fact are summarized as follows and supplemented from the record where required for sake of clarity.
 {¶ 11} On March 5, 2002, Murray and Brugger entered into a written contract for services to be performed by Brugger as an expert witness in an electric shock fatality case (the "Haar case"). The contract stated that Brugger would provide engineering consulting services, including investigation and possible testimony at trial as an expert witness. In exchange for these services, Murray would pay Brugger an hourly rate of $140 plus expenses according to a schedule set forth in the contract.
 {¶ 12} Brugger was hired for two reasons: (1) to determine if the height of the electrical line that caused the fatality was in violation of the applicable safety codes, and (2) to determine if the warning sign on the truck used by the decedent was adequate to prevent such an electric shock fatality. The contract specified, however, that it was understood that Brugger was "an independent professional consultant[.]"
 {¶ 13} The first bill Brugger submitted to Murray was dated April 5, 2002, covered work performed by Brugger through March 2002, and was for $1,688, with a $1,000 credit for an advance payment. Murray promptly paid the bill. The second bill Brugger submitted to Murray was dated May 2, 2002, covered work performed by Brugger in the month of April 2002, and was for $3,850. Again, Murray promptly paid the bill. The final bill Brugger submitted to Murray was dated October 4, 2002, covered work performed by Brugger in the months of May, June, September and October 2002, and was for $1,464. Murray refused to pay the bill.
 {¶ 14} Murray subsequently filed an action against Brugger alleging fraud and breach of contract in his bills. Brugger denied the allegations and filed a counterclaim for the balance owed on the October 2002 bill, alleging breach of contract. The trial court heard testimony from Patrick Murray and William Bartle, the Murray attorneys representing the plaintiff in the Haar case, and Brugger regarding the claims alleged by each party. Brugger testified about his 25 year background as an expert in his field and what he did for Murray after signing the contract. He also testified about the National Electrical Safety Code and Handbook. The relevant testimony focused on the three bills sent by Brugger to Murray. Each item on each bill was testified to and cross-examined by both parties. Brugger also testified about a fax he sent to Murray regarding height measurements of the electrical line, his notes from phone conversations he had with Murray attorneys and his deposition testimony in the underlying electric shock fatality case.
 {¶ 15} Patrick Murray testified regarding the payments made on the first two invoices but not the third invoice. He testified that Brugger would not give them a finding or opinion based on height measurements of the electrical line taken by OSHA but waited until he took his own measurements which differed from the OSHA measurements. It also appears that measurements were taken by Ohio Edison and had different results than the others. Furthermore, there was testimony that the height of the electrical line may have been changed by someone at sometime which would affect the height measurements and the possible code violation. Patrick Murray also testified about a conversation he had with Brugger on April 25, 2002, when he told Brugger to do nothing further on the case unless instructed by him or Bartle. Regarding the invoices submitted by Brugger, Patrick Murray testified that the second bill was paid by mistake. His normal practice is to personally approve all bills for payment but that when the second invoice was submitted, he was out of town and someone else in his firm approved payment on the bill. There was, however, no letter or document showing that Murray disputed the bills until they filed suit.
 {¶ 16} Bartle testified regarding his conversations with Brugger about the Haar case. He further stated that he spoke with Brugger more often than did Patrick Murray and that after April 25, 2002, he asked Brugger to do certain things on the case which were itemized in the invoice dated October 4, 2002. Bartle, however, was not responsible for paying any bills at the firm.
 {¶ 17} Murray's complaint alleged breach of contract and fraud. Brugger's counterclaim also alleged breach of contract. On the breach of contract claims, the lower court held that Murray and Brugger entered into a valid and enforceable contract for services, that Brugger promised to perform certain work for Murray, that Brugger did perform that work, and that Murray promised to pay for that work. The court further held that Brugger billed Murray for the work performed through three invoices, the third of which remains unpaid. As to the first and second invoices, the court held that if Murray disputed their contents it should not have paid the bills and that Murray's payment of those bills constituted a waiver of any defects in them. As to the third invoice, the court held that Brugger performed the work as required under the contract and that Murray had not paid him for that work. Accordingly, the court held that Murray breached the contract, that Brugger did not breach the contract and awarded Brugger $1,464 on his counterclaim.
 {¶ 18} On the fraud claim, the court first noted that Murray claimed Brugger damaged the Haar case by failing to provide information or providing the wrong information. Brugger countered that the information he provided was correct and that Murray did not like it because it was not helpful to the case against one of the defendants in the Haar case. The court held that the parties' disagreement was simply a disagreement among experts, not an intentional wrongdoing and that Murray had failed to prove the elements of fraud. The court therefore held that Murray's claim failed on the merits.
 {¶ 19} Finally, the court addressed Brugger's claim for attorney fees and held that Brugger had made a showing of bad faith on the part of Murray. Specifically, the court held that Murray did more than simply fail to pay the third invoice. The court continued: "Murray went on the offensive and commenced this suit against Brugger claiming fraud which the court has already held has no merit. Such action forced Brugger to hire counsel to defend himself. Moreover, prior to this case, the parties attempted a novation of the 3rd invoice. Brugger testified that he had a conversation with Mr. Murray wherein they agreed that Brugger would accept 50% of the 3rd invoice in exchange for Brugger calling off Dun 
Bradstreet's collection efforts. Brugger did his part. Murray did not." The court then held that such actions on the part of Murray could not be condoned. The court further found that Murray breached the original contract, then breached the attempted novation to settle the matter, and then sued Brugger claiming fraud. These actions, the court determined, were intentional, willful and in bad faith. Accordingly, the court awarded Brugger attorney fees of $9,710.26, the amount he paid his attorney in this case. Murray now challenges the trial court's judgment on appeal.
 {¶ 20} In its first assignment of error, Murray asserts that the trial court erred in ruling that Murray waived any defects in the first two invoices by paying those bills. Murray contends that it was only after the invoices were paid that it became apparent that the fees were inflated and unearned and that the information provided by Brugger was of no benefit to the Haar case. Murray therefore asserts that it had a right to restitution of the money paid on the first and second invoices.
 {¶ 21} Murray's first assignment of error raises the issue of whether its payment of the first and second invoices pursuant to the contract waived its right to allege a breach of the contract based on the services covered by those invoices. Although the trial court did state that because Murray paid the first and second invoices, it accepted and waived any defects in them, a full reading of the trial court's decision reveals that the court further held that the parties entered into a valid and enforceable contract for services and that Brugger performed the services as required by the contract. Accordingly, regardless of whether or not the trial court properly applied the law of waiver, the court concluded that Brugger did not breach the contract. This finding was supported by competent, credible evidence. See C.E. Morris Co. v. Foley Constr. Co.
(1978), 54 Ohio St.2d 279, syllabus. The first assignment of error is therefore not well-taken.
 {¶ 22} In its second assignment of error, Murray asserts that the trial court's findings that Murray breached the contract, that Brugger did not breach the contract and that Brugger was entitled to a judgment for the full amount of the third invoice were against the manifest weight of the evidence. Murray further contends that the trial court's finding that Brugger was not guilty of fraud was against the manifest weight of the evidence.
 {¶ 23} Our standard of review on manifest weight of the evidence issues in a civil case is whether the record contains some competent, credible evidence in support of the trial court's decision. C.E. MorrisCo., supra at the syllabus.
 {¶ 24} At the trial below, Brugger was questioned extensively about the contents of all three invoices and the work that he did to support those billings. Questions regarding the credibility of witnesses are matters that are left to the trier of fact, who is "best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80. Our review of the record shows that the trial court weighed the evidence, determined the credibility of the witnesses, concluded that Brugger had performed the services for which the parties contracted and that Murray had failed to pay the third invoice as required by the contract. There is competent, credible evidence in the record to support those findings.
 {¶ 25} As to Murray's claim for fraud, it is well-established that the elements necessary to support a claim of fraud are: "`(a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying on it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance.'" Mussivand v.David (1989), 45 Ohio St.3d 314, 322, quoting Burr v. Stark Cty. Bd. ofCommrs. (1986), 23 Ohio St.3d 69, paragraph two of the syllabus. The lower court expressly found that Murray failed to prove that Brugger intended to mislead Murray in his assessment of the evidence in the Haar case and that therefore Murray failed to prove its claim of fraud. We have thoroughly reviewed the record from the trial below and find that there was competent, credible evidence to support the trial court's finding. Accordingly, the court's judgment was not against the manifest weight of the evidence.
 {¶ 26} Finding that the trial court's judgment on the breach of contract and fraud claims was not in error, we further find that the court's award to Brugger of the amount due under the third invoice was supported by the record. The second assignment of error is not well-taken.
 {¶ 27} Murray's third and fourth assignments of error both address the trial court's award of attorney fees to Brugger and will be discussed together. The lower court based its award of attorney fees on its finding that Murray had engaged in bad faith in its dealings with Brugger. Murray asserts that the court's finding of bad faith is not supported by the record and that even if there is support for the finding of bad faith, the amount of attorney fees awarded was excessive.
 {¶ 28} As a general rule, attorney fees are not recoverable in a contract action unless authorized by statute as a cost of litigation,Sorin v. Bd. Of Edn. (1976), 46 Ohio St.2d 177, 179, the parties have contractually agreed to shift the burden of litigation costs,Krasny-Kaplan Corp. v. Flo-Tork, Inc. (1993), 66 Ohio St.3d 75, 77, or the losing party has acted in bad faith. Sorin, supra at 181. Where there has been a substantial showing of bad faith or wrongful motives, attorney fees are recoverable as damages. First Federal S. L. Assn. v. Perry'sLanding, Inc. (1983), 11 Ohio App.3d 135, 147. The Supreme Court of Ohio has defined "bad faith" as "`a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another.'" Hoskins v. Aetna Life Ins. Co.
(1983), 6 Ohio St.3d 272, 276, quoting Slater v. Motorists Mut. Ins. Co.
(1962), 174 Ohio St. 148, paragraph two of the syllabus.
 {¶ 29} In the present case, the lower court awarded Brugger attorney fees as compensatory damages after finding that Murray had acted in bad faith in its dealings with Brugger. The court based this award on finding that Murray breached the original contract, then breached the attempted novation to settle the matter and then sued Brugger claiming fraud. The court held that Murray's actions forced Brugger to hire counsel to defend himself. Our review of the record, however, reveals that Murray and Brugger had an honest disagreement as to the work Brugger performed and the value of that work to the Haar case. The lower court even recognized this in addressing Murray's fraud claim, when the court found that the parties' simply disagreed on some critical facts underlying the Haar case. Simply filing suit to contest a bill and to raise the issue of what Murray perceived to be fraudulent billing on Brugger's part does not rise to the level of bad faith as that term is defined by the Supreme Court. Indeed, Murray's own telephone records of conversations between its lawyers and Brugger differed from Brugger's invoices on the length of the conversations. This surely gave Murray cause to question whether Brugger's billings were justified.
 {¶ 30} In awarding attorney fees to Brugger, the lower court relied on the case of Shankar v. Columbus Warehouse Ltd. Partnership (June 6, 2000), 10th Dist. No. 99AP7-72. In that case, the plaintiffs sued the defendant seeking payment on a promissory note. After extensive negotiations, a magistrate of the common pleas court read into the record an agreement the parties had reached to settle the dispute. After further disputes between the parties, the trial court held that the parties had reached an enforceable oral agreement to settle the case and the court of appeals affirmed that decision. The defendant, however, continued to refuse to pay the plaintiff the money owed under the settlement agreement. The plaintiffs then filed suit alleging that the defendant had breached the settlement agreement. The defendant counterclaimed, alleging that the plaintiffs had breached the settlement agreement by continuing to the litigate the matter. The trial court concluded that both parties had breached the settlement agreement but not in any material way and that the parties' non-performance of their respective obligations was not excused by the other's breach. The court then awarded the defendant attorney fees as compensatory damages caused by the plaintiffs' breach of the settlement agreement. On appeal, the court of appeals affirmed the award of attorney fees as compensatory damages to the defendant, finding that those fees were attributable to and incurred as a result of plaintiff's breach of the settlement agreement. The court further held, however, that the plaintiffs were also entitled to an award of attorney fees as compensatory damages for the defendant's breach of the settlement agreement.
 {¶ 31} In the current case, the lower court relied on Shankar in support of its conclusion that Murray's breach of an attempted novation justified an award of attorney fees to Brugger. A novation involves the "* * * substitution of a new contract, debt, or obligation for an existing one, between the same or different parties. * * * The requisites of a novation are a previous valid obligation, an agreement of all the parties to a new contract, the extinguishment of the old obligation, and the validity of the new one." Black's Law Dictionary (5 Ed. Rev. 1979) 959. See, also, Citizens State Bank v. Richart (1984),16 Ohio App.3d 445, 446. Accordingly, where a novation has occurred, the parties' prior contract is extinguished and a new contract takes its place. An attempt at a novation is not in and of itself a new contract and thus a "breach of an attempted novation" is a nonentity. The lower court therefore erred in basing a finding of bad faith on such an erroneous legal concept.
 {¶ 32} Accordingly, we must conclude that the lower court erred in awarding Brugger attorney fees in the proceeding below and the third and fourth assignments of error are well-taken.
 {¶ 33} On consideration whereof, the court finds that substantial justice has not been done the party complaining, the judgment of the Sandusky Municipal Court is affirmed, in part, and reversed, in part, and the trial court's award of attorney fees is vacated. Appellant and appellee are each ordered to pay one-half of the costs of this appeal pursuant to App. R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Erie County.
Judgment affirmed, in part, and reversed, in part.
A certified copy of this entry shall constitute the mandate pursuant to App. R. 27. See, also, 6th Dist. Loc. App. R. 4, amended 1/1/98.
Pietrykowski, J., Singer, P.J., Parish, J. concur.