**ROLL et al.**

v.

**BACON et al.**

2011-Ohio-6972.]

Court of Common Pleas of Ohio,
Clermont County.

No. 2008 CVH 1934.

Decided Sept. 21, 2011.

24

John C. Korfhagen, for plaintiffs.

Douglas W. Thomson Co., L.P.A., and Douglas W. Thomson, for defendants.

VICTOR M. HADDAD, Judge.

{¶ 1} This matter was before the court on the 28th and 29th day of March, 2011, for a court trial on damages. Attorney John C. Korfhagen represented the plaintiffs, Jeffrey and Gina Roll, and attorney Douglas W. Thomson represented the defendants, Skip and Christine Bacon. The court took the matter under advisement and now renders the following decision.

## FINDINGS OF FACT

{¶ 2} This matter was previously before the court for a determination on ownership of the property at issue. The court issued a decision on August 2, 2010, in which it determined that the plaintiffs are the owners of the property containing a 14–foot right-of-way for ingress and egress by the adjoining properties. Many of the facts governing the underlying dispute in this matter are contained within that decision; however, the following additional facts were presented at the court trial on damages.

### UTILITY LINES

{¶ 3} Mr. Roll testified that certain utilities were installed with permission and are not at issue in this case. He testified that he granted Mr. Bacon permission to install electric, a one-inch water line, and a gas line within or along the side of the right-of-way. Those utilities are not at issue, and the plaintiffs are not seeking damages as a result of their installation. The only utilities at issue are a six-inch water line and a sewer line.

{¶ 4} Mr. Bacon confirmed that he did not seek permission to install the six-inch water line or the sewer line within the right-of-way because he believed, at the time, that he owned the property.[1] He did ask permission to install the six-inch water line outside the right-of-way, on the Rolls' property, but Mr. Roll would not consent. The sewer line was completed in 2007; however, the six-inch water line is incomplete at this time, and there remains approximately 40 feet between the end of the water line and the end of the driveway adjoining S.R. 133. Mr. Bacon testified that he continued installation of the water line after he learned through a letter written by Paul Yelton on July 10, 2008, that the Rolls were disputing ownership. He testified that he continued to install the water line because at that time, ownership was contested, but had not been determined.

{¶ 5} Mr. Roll testified that the construction that took place in the right-of-way has resulted in the driveway being widened from 14 to 19 feet. Currently, all

---

1. Mr. Roll testified that the first discussion he had with Mr. Bacon about ownership of the right-of-way occurred in 1999 when Mr. Bacon wanted to install a gate across the driveway.

equipment has been removed from the right-of-way, and any holes have been filled in by Mr. Bacon.

{¶ 6} The plaintiffs' expert, Roger Klingelhoffer, a self-employed general contractor, who has been in the business for 32 years, testified that he is experienced in the installation and removal of utility lines. He testified that he has measured the utility lines at issue in this case, i.e., a water line and a sewer line. He testified that the sewer line is approximately 670 to 675 feet in length, and would cost $20,100 to remove. He testified that the water line is approximately 675 to 680 feet in length, and would cost $16,875 to remove. He further testified that the removal of the water line will be especially complicated because of its close proximity to a gas line, which results in the cost being higher than a typical removal. He also testified that rather than removing the utility lines, they could be uncoupled where they intersect at State Route 133 at a significantly lower cost.

{¶ 7} The defendants' expert, Jim Fuhrman, an experienced realtor, testified that in his course of work, he determines the value of property for sale. The parties have stipulated as to his expertise as a realtor. Fuhrman, who did not evaluate the Bacons' property, testified that, based upon his knowledge of the real estate market, the Bacons' property would have no value if it had no access to sewer and/or water. Mr. Bacon agreed with this conclusion, based upon common knowledge that a property without access to sewer and/or water would have little value in comparison to a property with access to these utilities.

## TREE

{¶ 8} The tree at issue in this case was a white oak tree owned by Mr. Roll. The right-of-way ran between the tree and the house, and the tree was located beside the paved portion of the right-of-way. Mr. Roll testified that the tree was removed by Mr. Bacon in 2007, and prior to that time, Mr. Bacon never complained about its location. Further, it posed no obstacle to travel. While much of the defendant's questioning involved the right to travel the driveway free from obstruction, and despite the fact that the argument seemed to be that the tree was damaging or might cause damage to Mr. Bacon's vehicles, there was no testimony that this was the reason for its removal. Instead, Mr. Bacon testified that he removed the tree because he had run the sewer line beneath it, and he thought it was going to die. He testified that he spent $750 removing the tree and transporting it to a lumber mill.

{¶ 9} The plaintiffs' expert, Ronald Rothhaas, the owner of Arbor Doctor, L.L.C., and a certified arborist who specializes in tree healthcare and diagnostics, testified that he had reviewed photographs of the white oak tree that was removed by Mr. Bacon and that he had conversations with Mr. Roll about the size

of the tree. He determined that the tree was approximately 27 inches in diameter and 45 feet in height. Based upon the size, condition, type, and location of the tree, he calculated that the fair market value of the white oak tree was $5,548. He testified that this calculation was based upon standards that are typical in the industry for making such determinations. He also testified that if the tree were to be replaced with a sapling, the approximate cost would be between $500 and $600. Rothhaas stated that he intends to bill $300 for the work that he has performed on this matter.

{¶ 10} Fuhrman testified that he had viewed the Rolls' property and would, in its current condition, assign its value at approximately $125,000 to $129,000. He testified that the loss of the tree has no effect on its value, i.e., the property value neither increased nor decreased as a result of Mr. Bacon cutting the tree. He testified that trees have minimal value in relation to the overall value of property. He also testified that he did not view the interior of the Rolls' property when determining the value. His calculation was based solely upon his view of the exterior of the home and the surrounding property.

### CULVERT PIPE

{¶ 11} There is also evidence that the construction in, and expansion of, the right-of-way beyond 14 feet has caused damage to a culvert pipe running along the right-of-way. Mr. Roll testified that the culvert pipe became blocked with a rock following Mr. Bacon's installation of the sewer line, which resulted in flooding to his property. He testified that the rock became lodged in the culvert pipe because Mr. Bacon cut the pipe when installing the sewer line. The damage to Mr. Roll's property can be seen in the photos that have been submitted.

{¶ 12} Mr. Bacon testified that the sewer line installation did, in fact, damage the pipe, so he had his contractor repair it. He testified that he told Mr. Roll that if he wanted to replace the entire line, that Mr. Roll could purchase the pipe and Mr. Bacon would have it installed.

{¶ 13} Mr. Klingelhoffer testified that the cost to remove and replace the culvert pipe is $1,540.

### CLOUD ON TITLE

{¶ 14} Mr. Bacon testified that he has subdivided his property, which he purchased in 1999, into several different parcels. The deeds for these parcels were identified in the court's prior decision determining ownership, and the court will refer to those findings of fact when addressing this issue. Those deeds granted the purchaser of the parcels an easement across the land that the court has determined is owned by the Rolls. Mr. Bacon testified that despite the court's determination as to ownership of the 14–foot–wide strip of land that was

at issue, he has taken no steps to clarify any deeds, mortgages, or easements that have been filed. Mr. Roll testified that he is concerned about the effect these deeds, mortgages, or easements may have on his title. The Rolls contend that they are entitled to attorney fees as a result of the cloud that was placed on their title. He further contends that these deeds, mortgages, or easements should be declared void ab initio.

## ATTORNEY FEES

{¶ 15} Tom Blust, an attorney licensed to practice law in the state of Ohio since 1973, and who has previously been qualified as an expert in attorney fees, reviewed Korfhagen's case file to determine whether the attorney fees charged in this case are fair and reasonable. He testified that the hours spent preparing and litigating this case were reasonable and necessary and that the fee of $200/hour is consistent with, if not lower than, the fees charged by other attorneys in Clermont County with the same or similar experience. He further testified that the request for cost reimbursement in this case is reasonable. Mr. Blust did not charge for his services in this matter.

## REMEDIES SOUGHT BY THE PLAINTIFF

{¶ 16} The remedies sought by the plaintiff are as follows:

(1) Damages for the defendants' destruction of the white oak tree;

(2) Treble damages under R.C. 901.51 for the defendants' destruction of the white oak tree;

(3) Damages for trespass and for the restoration of the property to its original state prior to the installation of the utility lines, or an injunction requiring the defendants to restore the property to its original state prior to the installation of the utility lines;

(4) An injunction preventing the defendants from further damaging the property;

(5) Damages for the destruction and restoration of the drainage/culvert line servicing the plaintiffs' property to its original state, or an injunction requiring the defendants to restore the drainage/culvert line to its original state;

(6) Punitive damages for the expansion of the right-of-way beyond 14 feet in width that are permanent;

(7) Damages and attorney fees for the defendants' creation of a cloud on the plaintiffs' title, and an injunction removing the cloud on the plaintiffs' title and declaring that all encumbrances be declared void ab initio;

(8) A declaration that the right-of-way shall be limited to ingress and egress; and,

(9) Declaratory judgment as to the parties' responsibilities for future maintenance of the right-of-way.

## LEGAL ANALYSIS

### UTILITY LINES

{¶ 17} Until relatively recently, the law in Ohio regarding damage caused to property for trespassing was as follows: When the injury to property " 'is of a permanent or irreparable nature, the measure of damages is the difference in the market value of the property as a whole, including the improvements thereon, before and after the injury. If the injury is susceptible of repair, the measure of damages is the reasonable cost of restoration, plus reasonable compensation for the loss of the use of the property between the time of the injury and the restoration, unless such cost of restoration exceeds the difference in the market value of the property before and after the injury, in which case the difference in market value becomes the measure.' " *Martin v. Design Constr. Servs.*, 121 Ohio St.3d 66, 2009-Ohio-1, 902 N.E.2d 10, ¶ 14, quoting *Ohio Collieries Co. v. Cocke* (1923), 107 Ohio St. 238, 140 N.E. 356.

{¶ 18} In *Martin,* the Supreme Court pointed out that the Ninth District Court of Appeals held that the Martins were not entitled to recover the cost of their repairs, since they had failed to prove diminution in value. *Martin* at ¶ 15. The Ninth District Court of Appeals recognized that the *Ohio Collieries* rule was flexible; however, it determined that the "diminution in value" principle was a "limiting factor" on damages and that evidence must be presented as to the diminution in value before damages can be awarded. Id. The Supreme Court went on to find, as it had in previous Supreme Court decisions, that the holding of *Ohio Collieries* has been limited. "With regard to temporary damages, the court in *First Congregational* excised the diminution-in-value portion of the *Ohio Collieries* rule and offered instead the unqualified rule that 'the measure of damages is the reasonable cost of restoration or repairs.' " Id. at ¶ 17, 19, citing *Northwestern Ohio Natural Gas Co. v. First Congregational Church of Toledo* (1933), 126 Ohio St. 140, 184 N.E. 512. If, however, restoration is "impracticable," the measure of damages shall be the difference between the reasonable value immediately before the damage and the reasonable value immediately after the damage. Id. at ¶ 20. "Practicable" means that the restoration is " 'reasonably capable of being accomplished.' " Id., quoting *Black's Law Dictionary* (8th Ed. 2004), 1210. Therefore, by inserting the word "impracticable" into the standard, the type of damage recoverable depends upon the reasonableness of restoration under the circumstances, and not upon whether that cost would

exceed the difference in market value of the property before and after the injury. Id. The failure to present evidence of the diminution in property value is not fatal to a claim for damage to real property. Id. at ¶ 22, citing *Apel v. Katz* (1998), 83 Ohio St.3d 11, 697 N.E.2d 600.

{¶ 19} Based upon a lengthy analysis of the cases on this issue, the Supreme Court, in *Martin*, determined, "In an action based on temporary injury to noncommercial real estate, a plaintiff need not prove diminution in the market value of the property in order to recover the reasonable costs of restoration, but either party may offer evidence of diminution of the market value of the property as a factor bearing on the reasonableness of the cost of restoration." *Martin*, at ¶ 24. The loss in market value may be relevant but is no longer the essential inquiry. Instead, the essential inquiry is whether the restoration cost is reasonable. Id. at ¶ 25.

{¶ 20} In terms of the utilities, this court is being asked to address damages resulting to the Rolls' property as a result of the Bacons' installation of a six-inch water line and a sewer line through the right-of-way. The court finds that these utility lines constitute a temporary injury to the plaintiffs' property as they are capable of being removed and the property is able to be restored to its original condition. This is not a situation where the property was completely destroyed. Further, the court finds that, pursuant to *Martin*, the restoration cost is the appropriate method of calculating damages, since restoration is "reasonably capable of being accomplished." Again, this is not a situation where restoration is impossible, or even difficult, since all that is required is that the utility lines be removed.

{¶ 21} The testimony by Klingelhoffer was that the cost to remove the sewer line, which is approximately 670 to 675 feet in length, and to restore the right-of-way to its original condition is $20,100. He further testified that the cost to remove the six-inch water line, which is approximately 675 to 680 feet in length, and to restore the right-of-way to its original condition is $16,875. He indicated that this amount reflects that the removal of the water line will be especially difficult due to its close proximity to a gas line that is running through the right-of-way.

{¶ 22} The defendants presented no evidence contrary to Klingelhoffer's testimony regarding the removal of the sewer line and the water line in their entirety. Further, there was no evidence presented as to the market value of the Rolls' property either with or without the sewer line or water line. Therefore, the court cannot consider this factor to refute the reasonableness of the cost of restoration testified to by Klingelhoffer.

{¶ 23} The only evidence presented by the defendant, through the testimony of Klingelhoffer, was that the sewer line and water line could be uncoupled at the street, thus minimizing the cost of "repair"; however, there was no testimony as to the cost of this proposed repair. Further, the defendants presented no evidence to show that this option would fully restore the property to its original condition or that no other injury would occur as a result of leaving the sewer line or water line in place. Since the court has no evidence of the cost and consequence of this option in comparison to the complete removal of the utilities, the court cannot consider it when determining whether Klingelhoffer's calculations are reasonable.

{¶ 24} Pursuant to *Martin*, the plaintiffs are entitled to have their property restored to its original condition, and since there has been no testimony to indicate that Klingelhoffer's calculations were unreasonable, the court finds that the plaintiffs are entitled to damages in the amount of $20,100 for the removal of the sewer line and $16,875 for the removal of the water line, for a total of $36,975 for the removal of the utilities.

{¶ 25} Since injunctive relief is appropriate only when there is no adequate remedy at law and the harm caused is irreparable, and because the court has determined that a monetary remedy is available, i.e., restoration costs, the court finds that an injunction requiring the Bacons to restore the property to its original condition is not appropriate. Therefore, the court is awarding $36,975 in monetary damages for the removal of the utility lines and restoration of the Rolls' property to its original condition, and is denying the plaintiffs' request for injunctive relief on this issue.

## TREE

{¶ 26} Cases involving the removal of trees or other vegetation involve temporary damages to real property, and not permanent damages. *Hartman v. Ohio Dept. of Transp.*, Franklin App. No. 08AP–599, 2009-Ohio-469, 2009 WL 270358, ¶ 9. In *Hartman,* the defendant was mowing in the right-of-way along a public roadway when it trespassed upon the plaintiff's property, mowing down a hedgerow that served as a noise barrier. Noting that it would take several years for the plants to grow to the height and density of the removed hedgerow, the trial court found that the cost of restoration was inappropriate, and the correct measure of damages was the difference in value immediately before and immediately after the injury. The trial court then held that when fair market value cannot be feasibly determined, the appropriate measure of damages is the value of the property established by the owner.

{¶ 27} The plaintiff appealed to the Tenth District Court of Appeals and argued that while the trial court awarded damages for the restoration of the noise

barrier, it erred in not awarding damages for loss of quiet enjoyment of the residence. The *Hartman* court, citing *Martin*, found that the loss was temporary in nature and that the appropriate measure of damages should have been the restoration cost. *Hartman*, at ¶ 7, 9. However, the trial court's decision was affirmed, but only because the defendant failed to file a cross-appeal, thus waiving the issue of the appropriate measure of damages.[2]

{¶ 28} Further, the Twelfth District Court of Appeals has held that when vegetation, including trees, is removed as a result of a trespass, the measure of damage is the cost of reasonable restoration of property to the preexisting condition, or as reasonably feasible, without requiring grossly disproportionate expenditures and with allowance for the natural processes of time. *Collins v. Messer*, Butler App. No. CA2003–06–149, 2004-Ohio-3007, 2004 WL 1301393, ¶ 16. " '[W]hen the owner intends to use the property for a residence * * * according to his personal tastes and wishes, the owner is not limited to the diminution in value * * * or to the stumpage or other commercial value of the timber.' " *Fronsman v. Risaliti*, Stark App. No. 2008CA00028, 2008-Ohio-5074, 2008 WL 4416466, ¶ 32, quoting *Denoyer v. Lamb* (1984), 22 Ohio App.3d 136, 138, 490 N.E.2d 615.

{¶ 29} In *Collins*, the parties had agreed, prior to the filing of the action, that they would split the cost of hiring a landscaper to plant pine trees in the area between the properties. The total cost was $1,647.91. The parties split that cost, but the relationship deteriorated, and the complaint was filed. The court ordered compensatory damages in the amount of $823, which represented the plaintiff's out-of-pocket expense.

{¶ 30} In *Fronsman*, there were grossly disproportionate estimates in the amount of damages necessary to restore the property to its original condition. The plaintiff's expert testified that $13,781.23 plus tax was the reasonable cost of restoring 5,200 square feet of property to its original condition. A second, more conservative estimate, was presented by the plaintiff in the amount of $8,960. The defendant's estimate was $2,130, which represented the cost of planting seedlings, which would take time to grow to the approximate condition of the property prior to the removal of the vegetation. The trial court awarded $9,497.60 in compensatory damages, plus an award of treble damages, punitive

---

**2.** In summary, prior to *Martin*, the recovery of restoration costs in temporary-injury cases was limited when the reasonable restoration cost exceeded the difference in the value of the property before and after the injury. In that instance, the appropriate measure of damages was the diminution in value. Subsequent to *Martin*, the appropriate measure of damages in all cases where the injury is temporary in nature is the reasonable cost of restoration. Diminution in value is only a factor that *may* be considered in determining whether restoration costs are reasonable, and is not itself an element of damages that *must* be considered.

damages, and survey costs. The court of appeals found that this determination was not contrary to law but reduced it by $1,200 since the survey costs were not recoverable.

{¶ 31} In *Henderson v. Glancy,* Wayne App. No. 10CA0017, 2011-Ohio-1152, 2011 WL 860422, the Ninth District Court of Appeals was asked to determine whether the damages awarded by the trial court were supported by the competent, credible evidence. In that case, the plaintiff's expert determined that the value of the trees removed was $3,500. The defendant's expert estimated that the value of the trees removed was $2,488.78. The court awarded damages in the amount of $3,500, plus treble damages pursuant to R.C. 901.51.

{¶ 32} In this case, there were two different estimates presented. The first estimate, presented by the plaintiff through the testimony of Mr. Rothhaas, was that the fair market value of the tree was $5,548. The second estimate, presented by the defendant through the testimony of Rothhaas, was that the approximate cost of replacement with a sapling was between $500 and $600. The only testimony regarding fair market value of the property as a whole was from Fuhrman, who testified the approximate value of the Rolls' property is $125,000 to $129,000, and the removal of the tree did not increase or decrease this value.

{¶ 33} Pursuant to *Martin,* and subsequent cases, the court finds that it is of no consequence to the plaintiffs' collection of damages that they failed to show a change in the market value of their property resulting from the loss of the tree. Based upon an analysis of the case law, the court is persuaded by the reasoning of the *Hartman, Fronsman,* and *Henderson* courts and finds that the appropriate measure of damages in this case is the restoration cost and, pursuant to *Collins,* an allowance for the natural processes of time. It has been established that the restoration cost of replacing the mature tree with a sapling is between $500 and $600. It has also been established that the tree was approximately 27 inches in diameter and 45 feet in height and has a fair market value of $5,548. It will obviously take a sapling a significant amount of time to reach the diameter and height of the mature tree. Mr. Rothhaas testified that this calculation is based upon the size, condition, type, and location of the tree. The court finds that although Mr. Rothhaas did not necessarily refer to them as being such, these factors, especially the size and condition of the tree, are consistent with a determination on "the natural processes of time." Therefore, based upon the competent, credible evidence going to the size, condition, type, and location of the tree and the cost of replacement, the court finds that a compensatory award of $500 for replacement and $5,048 for "natural processes of time" is reasonable in this case. The court finds that this determination is consistent with *Henderson,* where the value of the tree was awarded as compensatory damages.

{¶ 34} The plaintiffs are also seeking treble damages pursuant to R.C. 901.51, which provides: "No person, without privilege to do so, shall recklessly cut down, destroy, girdle, or otherwise injure a vine, bush, shrub, sapling, tree, or crop standing or growing on the land of another or upon public land. In addition to the penalty provided in section 901.99 of the Revised Code, whoever violates this section is liable in treble damages for the injury caused." R.C. 901.51. In addition, "[a] person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist." *Collins*, 2004-Ohio-3007, 2004 WL 1301393, at ¶ 11, citing R.C. 2901.22(C), and *Wooten v. Knisley* (1997), 79 Ohio St.3d 282, 290, 680 N.E.2d 1245.

{¶ 35} The court finds Mr. Bacon's testimony credible and finds that he mistakenly believed that he owned the land upon which the tree was located. The evidence before the court is that Mr. Bacon's deed mistakenly indicated that he owned the tract of land at issue in this case. Further, he acted, on occasion, in a manner consistent with ownership. He filled sinkholes and potholes in the right-of-way and has paid taxes on the land at issue since he bought the property in 1999. Although some of the construction work in this case was performed after Mr. Bacon learned that the plaintiffs were asserting an ownership interest in the property, which occurred in 2008, the tree was removed prior to that time. The court would note that there was some testimony to indicate that Mr. Bacon knew that Mr. Roll was claiming ownership in 1999, when Mr. Bacon wanted to install a gate; however, that was eight years prior to the removal of the tree. Since that discussion in 1999, Mr. Bacon acted in a manner consistent with ownership, with no objection from the plaintiffs.

{¶ 36} In order to find that the defendants were reckless, the court must find that Mr. Bacon, with heedless indifference to the consequences, perversely disregarded a known risk that he did not own the property when he removed the tree. Based upon the fact that Mr. Bacon mistakenly believed he owned the property due to an error in his deed and acted, on occasion, as if he owned the property over the years with no objection from the plaintiffs, the court finds that the defendants' actions were not reckless, and they are not liable in treble damages under R.C. 901.51.

## CULVERT PIPE

{¶ 37} Mr. Roll testified that the culvert pipe became blocked with a rock following the installation of the sewer line and that the culvert pipe was cut, so as

to allow debris to get into the pipe. He further testified that despite Mr. Bacon's attempts to repair the line, it is still cut and is still damaging his property. Mr. Bacon testified that he has already repaired the damage to the pipe that was caused by the installation of the sewer line. Mr. Roll testified that the rock has been removed and that the water is draining better, but the pipe is still cut. Mr. Bacon testified that the photograph of the interior of the pipe (Plaintiffs' Exhibit 24) is probably consistent with what the pipe looks like today, but the photographs involving the exterior of the pipe do not represent the present condition, because Mr. Roll cleaned the pipe periodically.

{¶ 38} The court finds that the damage to the culvert pipe constitutes a temporary injury to the plaintiffs' property, as it is capable of being replaced and restored to its original condition. This is not a situation where the property was completely destroyed. Further, the court finds that pursuant to *Martin*, the restoration cost is the appropriate method of calculating damages, since restoration is "reasonably capable of being accomplished." Again, this is not a situation where restoration is impossible, or even difficult, since all that is required is that the culvert pipe be removed and replaced.

{¶ 39} The competent, credible evidence before the court is that, although a portion of the pipe has been replaced, and although Roll has removed the large rock that fell into the pipe, it is still cut and debris is still entering the pipe. This is evident from the fact that Mr. Bacon testified that Mr. Roll cleaned the pipe periodically. Although Mr. Roll testified that the water is draining better, his testimony also revealed that the problem is not completely remedied and his property is still being damaged. Pursuant to *Martin*, the plaintiffs are entitled to have their property restored to its original condition, i.e., the condition it was in prior to the sewer line being installed and the culvert pipe being cut. Mr. Klingelhoffer testified, and there was no contrary evidence, that it would cost $1,540 to remove and replace the pipe. Therefore, based upon the competent, credible evidence before the court, the plaintiffs are awarded $1,540 for the removal and replacement of the culvert pipe in order to restore their property to its original condition.

{¶ 40} Because injunctive relief is appropriate only when there is no adequate remedy at law and the harm caused is irreparable, and because the court has determined that a monetary remedy is available, i.e., restoration costs, the court finds that an injunction requiring the Bacons to restore the property to its original condition is not appropriate. Therefore, the court is awarding $1,540 in monetary damages for the removal and replacement of the culvert pipe in order to restore the Rolls' property to its original condition and is denying the plaintiffs' request for injunctive relief on this issue.

## Removal of the Cloud on Title and Attorney Fees

{¶ 41} The plaintiffs are also seeking damages and attorney fees for the defendants' creation of a cloud on the plaintiffs' title, and an injunction removing the cloud on the plaintiffs' title and declaring that all encumbrances are void ab initio.

{¶ 42} The deeds and encumbrances at issue include the deeds subdividing the Bacons' property, which give the purchasers of those subdivided lots an easement across the property that the Bacons do not own. As a result of the court's previous decision, the Bacons had no legal right to convey an easement across land comprising the right-of-way, which the court has determined the Rolls own. Since the Bacons had no legal right to grant an easement across this property, the court hereby declares that those deeds are void ab initio and must be amended so as to remove the easement before they can become enforceable.

{¶ 43} In support of their argument that they should be awarded damages and attorney fees for the cloud on title, the plaintiffs cite a March 5, 2008 decision by this court in *McClure v. Fischer Attached Homes,* 146 Ohio Misc.2d 57, 2008-Ohio-2676, 889 N.E.2d 602.

{¶ 44} In regard to damages, the plaintiffs have offered no evidence that they have been damaged by the cloud that was placed upon their title. The only evidence presented is that Mr. Roll is fearful that the cloud on title will result in harm to him, but no damages have been proven at this time. For this reason, the court is not awarding compensatory damages for the cloud that has been placed on the plaintiffs' title.

{¶ 45} In regard to the request for attorney fees, the court has broad discretion on this issue. *Stern v. Whitlatch & Co.* (1993), 91 Ohio App.3d 32, 38, 631 N.E.2d 680. Ohio follows the American rule when it comes to attorney fees, which does not allow the prevailing party in a civil action to recover fees in the absence of statutory authorization. *Sorin v. Warrensville Hts. School Dist. Bd. of Edn.* (1976), 46 Ohio St.2d 177, 179, 75 O.O.2d 224, 347 N.E.2d 527. However, a prevailing party might be entitled to an award of attorney fees when the party against whom the fees are taxed is found to have acted in bad faith. *Reagans v. MountainHigh Coachworks, Inc.,* 117 Ohio St.3d 22, 2008-Ohio-271, 881 N.E.2d 245, ¶ 10. See also *State ex rel. Crockett v. Robinson* (1981), 67 Ohio St.2d 363, 369, 21 O.O.3d 228, 423 N.E.2d 1099, citing *Sorin,* and *State ex rel. Grosser v. Boy* (1976), 46 Ohio St.2d 184, 347 N.E.2d 539; *Vance v. Roedersheimer* (1992), 64 Ohio St.3d 552, 556, 597 N.E.2d 153. Further, the prevailing party might be entitled to an award of attorney fees when the party against whom the fees are sought has acted vexatiously, wantonly, obdurately, or for oppressive reasons. *Village of Oakwood v. Makar* (1983), 11 Ohio App.3d 46, 49, 11 OBR 79, 463

N.E.2d 61, citing *Sorin.* "[I]n a proper case, a party could recover the attorney fees incurred in removing a cloud on title as 'special damages,' and could also recover attorney fees for prosecuting a slander of title action. The latter fees would not be included in 'special damages' but would arise from a finding of bad faith." *Green v. Lemarr* (2000), 139 Ohio App.3d 414, 435–436, 744 N.E.2d 212.

{¶ 46} In *McClure,* the court, citing *Green v. Lemarr,* held that the defendant, who had filed several counterclaims, could recover attorney fees "incurred in removing the cloud on his title." *McClure,* 146 Ohio Misc.2d 57, 889 N.E.2d 602, at ¶ 21. The court further held that he could recover attorney fees for the prosecution of his counterclaim only if he had proven bad faith. "Bad faith" is defined as " ' "a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another." ' " *Murray & Murray Co., L.P.A. v. Brugger,* Erie App. No. E–04–032, 2005-Ohio-5262, 2005 WL 2415979, ¶ 28, quoting *Hoskins v. Aetna Life Ins. Co.* (1983), 6 Ohio St.3d 272, 276, 452 N.E.2d 1315, quoting *Slater v. Motorists Mut. Ins. Co.* (1962), 174 Ohio St. 148, 187 N.E.2d 45, paragraph two of the syllabus.

{¶ 47} In *McClure,* attorney fees were awarded for the removal of the cloud on title and for the prosecution of the underlying quiet title action. *McClure* is distinguishable from the current case. In *McClure,* the plaintiffs were pro se and had filed a defective mechanic's lien on the defendant's property. Since they were pro se, the court realized that it would be necessary for the defendant's attorney to file the appropriate paperwork to have the cloud on title removed. For this reason, the court awarded attorney fees for the physical removal of the cloud on title. Further, in that case, it was determined that the quiet-title action was necessary due to the bad faith and deceptive conduct of the plaintiffs. They made deceptive statements in obtaining the lien and filed the lien for an improper purpose. For those reasons, the court determined, pursuant to *Green,* that the payment of attorney fees was warranted.

{¶ 48} In this case, the court, in its August 2, 2010 decision, determined that the Rolls were the owners of the property at issue and that the defendants had only an interest in the property as a right-of-way. By making a declaration of ownership, the court quieted title to the tract of land at issue. The plaintiffs are now seeking attorney fees for the prosecution of the quiet-title action, as well as attorney fees for the physical removal of the cloud on title.

{¶ 49} Based upon the previously cited case law, the plaintiffs are entitled to an award of attorney fees from the defendants only if provided for by statute or if they have acted in bad faith. In this case, the plaintiffs have not pointed to, and the court cannot find any, statutory authority for the granting of attorney fees in

a declaratory-judgment action to quiet title. Therefore, the plaintiffs are not entitled to an award of attorney fees absent a showing of bad faith in the defendants' creation of the cloud on title.

{¶ 50} As previously defined, "bad faith" requires that the plaintiffs prove that the defendants acted with a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive, or ill will partaking of fraud. It also embraces actual intent to mislead or deceive another. In this case, the defendants had a genuine and reasonable belief that they owned the property at issue. The defendants' deed clearly stated that they were the owners of the property. It took the court some time to review the defendants' entire chain of title to determine that they were not the legal owners of the property in question. When the defendants subdivided their property and created easements across the land at issue, they had a legitimate reason to believe that they owned the property and truly believed that they had a right to grant an easement across it. For this reason, the court cannot find that the defendants acted in bad faith when they created the cloud on the plaintiffs' title. Therefore, the court denies the plaintiffs' request for attorney fees and costs for the prosecution of the declaratory judgment action to quiet title.

{¶ 51} Additionally, both parties are represented by highly competent counsel; therefore, it is unnecessary for Mr. Korfhagen to file the appropriate paperwork to remove the cloud on the plaintiffs' title. Instead, the court is going to require that Mr. Thomson and the defendants have the necessary paperwork filed with the Recorder's Office for the removal of the cloud on title. The court is going to require that the cloud on title be removed by 4:30 p.m. on the 45th day following the date of the filing of this decision.

{¶ 52} If the cloud on title has not been removed by that date, the court will entertain an appropriate motion filed by the plaintiffs, which may include, but is not limited to, a motion for contempt pursuant to R.C. 2705.01 et seq. and a motion for attorney fees and costs for the removal of the cloud on title. The court will not, however, entertain a motion as to attorney fees and costs resulting from the prosecution of the action.

## PUNITIVE DAMAGES

{¶ 53} The plaintiffs are also seeking punitive damages for the expansion of the right-of-way beyond 14 feet in width. They allege that these damages are permanent. The court would first note that there are no permanent damages in this case. The utility lines can be removed, the culvert pipe can be replaced, a new tree can be planted in place of the white oak tree, and grass can be replanted. Any dirt that was moved can be removed, or grass can be planted in the dirt, and the property is reasonably capable of restoration to its original

condition. Therefore, the plaintiffs claim that there are permanent damages in this case is unfounded.

■■■■■■ {¶ 54} In terms of punitive damages, "[i]n tort law, punitive damages are available in actions involving fraud, actual malice, oppression, or insult on the part of the defendant." *Creech v. Brock & Assoc. Constr., Inc.*, 183 Ohio App.3d 711, 2009-Ohio-3930, 918 N.E.2d 541, ¶ 20. "Actual malice, necessary for an award of punitive damages, is (1) that state of mind under which a person's conduct is characterized by hatred, ill will, or a spirit of revenge or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." Id., at ¶ 21, citing *Preston v. Murty* (1987), 32 Ohio St.3d 334, 335, 512 N.E.2d 1174. See also *Shanklin v. Lowman*, Logan App. No. 8–10–07, 2011-Ohio-255, 2011 WL 290643, ¶ 62. " 'Since punitive damages are assessed for punishment and not compensation, a positive element of conscious wrongdoing is always required.' " *Creech*, at ¶ 21, quoting *Preston* at 335.

{¶ 55} The court recognizes that at least a portion of the right-of-way is extended beyond the 14 feet granted to the defendants in the parties' deeds. However, the right-of-way was extended due to the installation of utilities and the movement of dirt from one area to another. Mr. Bacon testified that the only area of the drive that he intended to expand beyond the 14 feet was at the entrance and that his intent was to expand according to county requirements for subdivided properties. He further testified that he did not intend to extend the roadway onto the Rolls' property but instead planned to perform the expansion within the county's right-of-way along S.R. 133.

{¶ 56} Based upon all of the competent, credible evidence presented, the court cannot find that the required positive element of actual malice by the Bacons has been satisfied. While the Bacons may have infringed upon the plaintiffs' property rights, there is no evidence that the violation was with a state of mind under which their conduct could be characterized by hatred, ill will, or a spirit of revenge, nor is there evidence that the violation was with a conscious disregard for the rights and safety of the plaintiffs that had a great probability of causing substantial harm. Instead, the plaintiffs are seeking to punish the defendants for a mistake in the defendants' deed that they did not cause and of which they were not aware. The court finds that this is not the appropriate case for an award of punitive damages; therefore, the plaintiffs' request for punitive damages is hereby denied.

### MISCELLANEOUS REMEDIES SOUGHT BY PLAINTIFFS

{¶ 57} The plaintiffs have requested that the court declare that the right-of-way be limited to ingress and egress only. Having re-reviewed the chain of title

in this case, and based upon the competent, credible evidence presented, the court hereby declares that the plaintiffs are the owners of the property containing a 14–foot right-of-way that the defendants may use for ingress and egress only.

{¶ 58} The plaintiffs have also requested that the court enjoin the defendants from further damaging the property. The court finds that pursuant to its declaration of ownership and its declaration that the right-of-way be limited to ingress and egress only, the defendants are hereby enjoined from further damaging the plaintiffs' property; however, an exception must be made for the normal wear and tear associated with the use of the right-of-way for ingress and egress purposes.

{¶ 59} Finally, the plaintiffs have requested that the court make a declaration as to the parties' responsibilities for future maintenance of the right-of-way. Having re-reviewed the chain of title to both properties, the court finds that the deeds creating the right-of-way are silent as to the maintenance of the right-of-way. Further, the plaintiffs have presented no evidence as to the parties' intent regarding maintenance of the right-of-way. In fact, both parties presented evidence that each has maintained the right-of-way to some degree. Since the court has no evidence as to the grantor's intent, and since there has been no evidence presented as to any maintenance agreement between the parties, the court is not inclined to declare the parties' responsibilities for future maintenance of the right-of-way at this time. That determination shall be left to the parties.

{¶ 60} The court would, however, warn the plaintiffs to be mindful of the fact that according to Ohio law, the Rolls must not interfere with the Bacons' right to use the right-of-way for ingress and egress purposes. Further, the court would warn the Bacons to be mindful of Ohio's law on abandonment of an easement. Therefore, the court recommends that the parties come to an agreement as to the maintenance of the right-of-way in order to avoid further litigation on this issue.

### DEFENDANTS RIGHT TO OFFSET DAMAGES

{¶ 61} The final issue for the court's determination is the defendants' argument at trial that they are entitled to offset the amounts they have paid for maintenance and taxes on the right-of-way. The plaintiffs assert that the defendants are not entitled to offset those amounts, since they did not file a counterclaim or assert the right as an affirmative defense. Each time the defendants presented evidence on this issue, plaintiffs' counsel objected.

{¶ 62} A party cannot receive a monetary judgment in any amount absent a counterclaim against the plaintiffs. *BJ Bldg. Co., L.L.C. v. LBJ Linden Co. L.L.C.*, 177 Ohio App.3d 166, 2008-Ohio-3373, 894 N.E.2d 104, ¶ 20. *BJ Bldg.* is a contractual case, and not a trespass action; however, the logic is the same.

Without a counterclaim or affirmative defense having been filed, the plaintiffs were not on notice that the defendants were seeking damages for expenses that they paid in maintaining the right-of-way and taxes paid on the property. If the court were to allow an offset in this case, it would essentially be denying the plaintiffs their due process rights. Additionally, even if the court were to entertain the defendants' argument without requiring that they file a counter-claim or affirmative defense, the court finds that the defendants have failed to prove that they are entitled to these amounts.

{¶ 63} In regard to the taxes, defendants' Exhibit 18 purports to show that the Bacons have been paying taxes on the property. However, Mr. Roll testified that he, too, has paid taxes on this property. Therefore, if the court were to offset the taxes paid by the defendants, it would essentially be forcing Mr. Roll to pay double taxes on the property constituting the right-of-way, i.e., taxes already paid plus the taxes resulting from the offset. Instead, the more appropriate course of conduct for the defendants to take might be to present the court's decision, filed August 2, 2010, to the Clermont County auditor and seek a credit or refund of those amounts previously paid by them.

{¶ 64} As for the maintenance expenses, the defendants have failed to prove that they are entitled to reimbursement for these expenses. The court has already determined that the deeds in this case do not expressly state who is responsible for the costs of maintenance on the right-of-way. Further, the court is not, at this time, allocating responsibility for maintenance costs, since no evidence has been presented as to any oral or written agreements between the parties. Therefore, if the defendants wish to be reimbursed for these costs, the parties must apportion maintenance costs between themselves and include a provision that the defendants will be either fully or partially reimbursed.

{¶ 65} Based upon the foregoing, the court finds that the defendants have failed to prove that they are entitled to an offset for the costs of maintenance and the taxes paid on the right-of-way.

## CONCLUSION

{¶ 66} Based upon the foregoing, and the competent, credible evidence before the court, the court hereby finds as follows:

{¶ 67} UTILITY LINES—The total monetary damages due the plaintiffs for the removal of the utilities and the restoration of the property to its original condition is $36,975 ($20,100 for the sewer line plus $16,875 for the six-inch water line). The plaintiffs' alternative request for injunctive relief is denied.

{¶ 68} WHITE OAK TREE—The total monetary damages due the plaintiffs for the removal and the replacement of the tree, plus an allowance of the "natural

processes of time" is $5,548 ($500 for replacement plus $5,048 for "natural processes of time"). The plaintiffs' request for treble damages is denied.

{¶ 69} CULVERT PIPE—The total monetary damages due the plaintiffs for the removal and replacement of the damaged culvert pipe is $1,540. The plaintiffs' alternative request for injunctive relief is denied.

{¶ 70} CLOUD ON TITLE [3]—The plaintiffs' request for monetary damages due to the cloud that was placed upon their title is denied, since damages were not proven. However, any and all deeds, mortgages, and easements created as a result of the defendants' mistaken ownership of the property constituting the right-of-way are declared void ab initio.

{¶ 71} The defendants and their attorney are hereby ordered to take the appropriate action to have the cloud on title removed by 4:30 p.m. on the 45th day following the date of the filing of this decision. Should the defendants fail to do so, the court will consider the appropriate motions filed by plaintiffs' counsel.

{¶ 72} ATTORNEY FEES—Since the plaintiffs failed to show bad faith, the court denies their request for attorney fees.

{¶ 73} PUNITIVE DAMAGES—Since the plaintiffs failed to satisfy the standard for punitive damages, the court denies their request for punitive damages.

{¶ 74} MISCELLANEOUS REMEDIES—The defendant's use of the right-of-way is hereby limited to ingress and egress only, as provided in the deeds.

{¶ 75} The defendants are hereby enjoined from further damaging the plaintiffs' property, including the right-of-way, with an exception for the normal wear and tear associated with ingress and egress.

{¶ 76} The court denies the plaintiffs' request that it allocate responsibility for the maintenance of the right-of-way. That determination shall be left to the parties.

{¶ 77} DEFENDANTS REQUEST TO OFFSET DAMAGES—The court denies the defendants' request to offset the taxes paid and the maintenance costs expended.

{¶ 78} It is ordered that this decision shall serve as the judgment entry in this matter.

Judgment accordingly.

---

3. In the August 2, 2010 entry, the court quieted title by determining ownership of the property at issue.